Jamie E. Wrage, Bar #188982
**STREAM KIM HICKS WRAGE & ALFARO, PC**
3403 Tenth Street, Suite 700
Riverside, CA   92501-3641
Telephone:   (951) 783-9470
Facsimile:   (951) 783-9475
Email:  Jamie.Wrage@streamkim.com

Attorneys for Plaintiffs,
Rebecca Joan Joseph, Jonathan Joseph,
Steven Kramer, and Jason Joseph

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re: | BK Case No.: 8:19-bk-12480-TA |
| Guy S. Griffithe | Chapter 7 |
| Debtor. | Adv. No.: |
| | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT [11 U.S.C. § 523(a)(2)(A) and (a)(4)]** |
| REBECCA JOAN JOSEPH, JONATHAN JOSEPH, STEVEN KRAMER, AND JASON JOSEPH | |
| Plaintiffs, | **Date:** **Time: [TO BE SET BY SUMMONS]** **Place:** |
| v. | |
| GUY S. GRIFFITHE | |
| Defendant. | |

TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE:

Rebecca Joan Joseph, Jonathan Joseph, Steven Kramer, and Jason Joseph complain against Guy S. Griffithe to determine the dischargeability of a debt owed Plaintiffs, and respectfully represents:

<u>STATEMENT OF JURISDICTION, PARTIES AND VENUE</u>

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. section 1334(a) and (b) and 28 U.S.C. section 157(a) and (b).  All claims for relief in this complaint are core proceedings pursuant to 28 U.S.C. section 157(b)(2)(I).

2.    Rebecca Joan Joseph ("Rebecca"), Jonathan Joseph ("Jonathan"), Steven Kramer

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA  92501
951-783-9470

1
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

J2002/000 - 193865.1

("Kramer"), and Jason Joseph ("Jason") (collectively, "Plaintiffs") are the Plaintiffs in this adversary proceeding. Guy S. Griffithe ("Defendant") is the Defendant in this adversary proceeding and made the various representations to Plaintiffs as set forth in this complaint, acted as a fiduciary to Plaintiffs as set forth in the complaint, breached his fiduciary obligations to Plaintiffs and embezzled Plaintiffs' property ($400,000) and converted plaintiff's property $400,000, all to the damage of Plaintiffs as set forth herein.

3.      Venue for the claims for relief in this adversary complaint is appropriate pursuant to 28 U.S.C. section 1409(a).

4.      This adversary proceeding arises in the Chapter 7 case of In re Guy S. Griffithe, case number 8:19-bk-12480-TA, currently pending in the Santa Ana Division of the United States Bankruptcy Court for the Central District of California.

I.

FACTUAL ALLEGATIONS

5.      This lawsuit concerns a fraudulent scheme to entice Plaintiffs into investing four hundred thousand dollars ($400,000) into a company that owned a controlling interest in a marijuana growing venture that was already operating profitably in the State of Washington.

6.      Kramer and his wife were introduced to Defendant in late 2015 by Brooks Bailey ("Bailey"), Kramer's real estate agent for a home he purchased. At that time, Defendant was operating a mortgage brokerage. Bailey mentioned a great investment opportunity to Kramer but at that time Kramer did not have the funds to invest.

7.      In early 2016 Bailey contacted Kramer again about a one-in-a-lifetime investment opportunity (Green Acres Pharm, LLC ("Green Acres")/Renewable Technologies, Inc. ("Renewable")) in which Bailey was going to invest and he referred Kramer to Defendant. Defendant provided Kramer with a brochure regarding an investment opportunity which provided financial information showing alleged potential profits for the company in 2017 of over $31 million. Believing Defendant and Bailey to be truthful, Kramer introduced his family members, Jason, Jonathan, and Rebecca, to Defendant to discuss the investment. The various parties had numerous conversations. Defendant answered questions posed by Plaintiffs and promised that all

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

2
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

J2002/000 - 193865.1

investment funds would be used to expand the marijuana oil production of Green Acres, and that the build out would be done by the end of 2016, such that all investors would receive their investment money back in quarterly returns on investment in 1-2 years. Defendant also boasted that he was going to sell the company to a large pharmaceutical company in the future. Neither Defendant nor Bailey disclosed to Plaintiffs that Bailey worked for Defendant in a production company that Defendant operated at the time that Plaintiffs invested.

8.     Defendant represented that this was a once-in-a-lifetime investment opportunity and that if Plaintiffs purchased stock in Renewable, which owned a substantial interest in Green Acres, they would be assured of receiving a very significant quarterly dividend and would soon be millionaires when the company went public.

9.     Defendant explained and represented to Plaintiffs that Green Acres had a legal and profitable ongoing marijuana growing operation in Washington State and was looking to expand into the oil production for medical purposes.

10.     Defendant gave Plaintiffs a business plan which identified Defendant and Robert Russell ("Russell") as the "Management Team." Defendant's attached bio stated that he was Green Acres' "Strategic Development Director' and had "spent 20 years in the business of finance and company development solutions." Defendant's bio further boasted that he was a "licensed lender for 18 years, property developer and founder of several successful business platforms."

11.     Within the business plan, there was a single sheet of financial information, which stated that Green Acres would generate gross sales of $32,000,000 in the first year of operations, with net profits of $31,230,917. It also made additional promises: (1) "These financials are represented only as an estimate of low volume and high cost. This does not reflect additional income being produced from the leaf of the product." and (2) "This is based on a 10,000 sq. ft. facility that we have already built." and (3) "Build out cost was $2,400,000 and the only outstanding debt is approximately $640,000 for the initial buildings owned by Bob and Sonja Russell."

12.     No other financial information of any nature was provided other than oral promises of returns such that the initial investments would be repaid within two years.

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

3
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

J2002/000 - 193865.1

13.     Defendant was persuasive with his promises.  Plaintiffs were shown glossy pictures of thousands of marijuana plants in cultivation at a large storage facility ostensibly located in Washington State.  They were shown pictures of permits and licenses hung on the wall which were represented to be evidence of Green Acres' legal operation.

14.     The discussions ultimately turned to how much money the family members wished to invest in Renewable Technologies' stock.  Defendant told Plaintiffs that the stock was being offered at the rate of $100,000 for a .5% interest in Green Acres Pharm, LLC.

15.     Based upon Defendant's representations and assurances that Renewable Technologies and Green Acres were making huge legal profits, Kramer agreed to invest $100,000, Jason agreed to invest $100,000, and Jonathan and Rebecca jointly agreed to invest $200,000 in the stock.

16.     Over the next couple of weeks, Defendant called Kramer, who was acting as spokesperson for the family for the investments, several times per day regarding the status of the funds being used to invest.  Kramer was using money borrowed from his parents and executed a note to repay.  Defendant provided all Plaintiffs identical agreements entitled "Purchase of Shares Interest Agreement" ("Shares Agreement").  The Shares Agreement is extremely confusing.  While it seems to claim that SMRB, LLC, which operated Green Acres Pharm, LLC, and Defendant and Russell, owned 100% of Renewable Technologies.  By the terms, Renewable Technologies Solution, Inc. was selling an interest in Renewable Technologies Solution, Inc. through which the buyers would somehow own stock in SMRB, LLC at the rate of a .5% interest in SMRB, LLC's stock for $100,000, and therefore they would own the same percentage interest in Green Acres.  The details were not explained to Plaintiffs beyond the fact that they would own a .5% interest in Green Acres for each $100,000 invested via this purchase.  Because Jonathan and Rebecca were investing $200,000, they would own a full 1 %. Kramer and Jason would each own .5%.

17.     Defendant represented to Plaintiffs that they would receive quarterly dividends in perpetuity, or at least until the sale of the company.

18.     Defendant prepared documents entitled "Purchase of Shares Interest Agreement"

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA  92501
951-783-9470

J2002/000 - 193865.1

1  and presented them to Plaintiffs by email in June 2016. A true and correct copy of the Shares

2  Agreement presented to Jonathan Joseph and Rebecca Joan Joseph is attached hereto as Exhibit

3  "1." A true and correct copy of the Shares Agreement presented to Jason Joseph is attached hereto

4  as Exhibit "2." A true and correct copy of the Shares Agreement presented to Kramer is attached

5  hereto as Exhibit "3."

6      19.    The Shares Agreements are confusing and internally inconsistent documents which

7  provide that Russell owns "100% of the issued and outstanding interest of SMRB, LLC, a

8  Washington corporation." Elsewhere, the Shares Agreements provide that Plaintiffs would

9  purchase an interest in SMRB, LLC from Renewable Technologies Solution, Inc. The amount of

10  stock/units purchased under the Shares Agreements was indicated to be one half of one percent

11  (.50%) each for Jason and Kramer and (1.0%) for Jonathan and Rebecca. The Shares Agreements

12  do not state percent ownership was based on all outstanding shares/units in SMRB, LLC or only

13  the amount owned by Renewable Technologies Solution, Inc. (which would appear from the face

14  of the Shares Agreement to be none). The purchase price for the interest being acquired was

15  $100,000 for Jason, $100,000 for Kramer and $200,000 for Jonathan and Rebecca. This money

16  was paid by Plaintiffs to Defendant in June 2016 by wire transfer.

17      20.    After payment, communications largely stopped. Plaintiffs had to harass Defendant

18  or further information. Plaintiffs never received any evidence of their ownership in SMRB, LLC,

19  Green Acres Pharm, LLC or Renewable Technologies Solution, Inc. After Kramer repeatedly

20  called Defendant regarding the quarterly dividend for the third quarter of 2016, Defendant finally

21  provided Kramer, Jason, and Jonathan and Rebecca with checks for a dividend payment in

22  December 2016. Every time a dividend payment came due, Kramer had to repeatedly call

23  Defendant on behalf of his family to find out when the payments would be made. Defendant

24  assured Plaintiffs that the companies were doing well and were profitable and made many excuses

25  why the dividends were slow in being sent and why checks bounced, claiming problems with the

26  accountant, with the post office, with checks, etc. When dividend payments were made, they were

27  made from different accounts with different company names. The last dividend paid to Plaintiffs

28  was for the third quarter of 2017. These dividend payments for five quarters totaled approximately

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

5
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

J2002/000 - 193865.1

1   10% of the Plaintiffs' original investments.

2   21.   In August 2017, Defendant contacted Plaintiffs and said that the companies needed

3   to correct their paperwork because there had been some mistakes.  He indicated that the change in

4   the paperwork would not change the investment, and everything else would be same as the

5   investment would just transfer over.  Defendant indicated that no further quarterly payments would

6   be made until the new documents were signed.  Defendant provided Plaintiffs with a Mutual

7   Rescission of Shares Interest Agreement ("Recession Agreement"), which they executed.  That

8   Rescission Agreement purported to cancel the Shares Agreement.  Defendant then provided

9   Plaintiffs with Subscription Agreements for a "Membership Interest" in Green Acres Pharm, LLC,

10  the company represented as owner of a 49% interest in SMRB, LLC.  Plaintiffs refused to sign the

11  original version of the Subscription Agreement, which asked them to confirm that they were

12  "Accredited Investors" under federal securities laws, which they are not.  After this language was

13  removed, Plaintiffs executed the Subscription Agreements.  No money was returned to them as

14  part of this transaction.

15  22.   The Subscription Agreement and Rescission Agreement executed by Jonathan and

16  Rebecca is attached hereto as Exhibit "4."  The Subscription Agreement and Rescission Agreement

17  executed by Jason is attached hereto as Exhibit "5."  The Subscription Agreement executed by

18  Kramer is attached hereto as Exhibit "6."[1]

19  23.   The Subscription Agreements provide that they are governed by California law.

20  24.   After the payment of their investment funds, Plaintiffs repeatedly asked Defendant

21  for financial information on Renewable Technologies Solution, Inc., Green Acres Pharms, LLC,

22  and SMRB, LLC.  Initially no financial information was forthcoming, but ultimately, they were

23  provided in March 2018 with a "2017 Company Overview" glossy brochure that indicated net

24  income for Green Acres Pharm, LLC in 2017 of $317,813.53.  While far less than the $31,000,000

25  promised, this was a profit.  Then, no dividend payments were made for the last quarter of 2017

26  or the first quarter of 2018.  After harassing Defendant for information on the missing payments,

27

28
---
[1] Kramer has not been able to locate his copy of the Rescission Agreement, but it was the same in form as those of his other family members.

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

J2002/000 - 193865.1

tax forms, and status of the companies, Defendant ultimately provided Plaintiffs with a new P&L statement for Green Acres Pharm, LLC in June 2018, showing a loss for 2017 of $334,042.26 and a loss for the first quarter of 2018.  No further dividend payments have been made.

25.    Plaintiffs also repeatedly requested tax documents for the dividends they received, but those were not provided.

26.    At a conference call with investors on August 16, 2018, Defendant and Russell admitted that the company(ies) had lost money, really never made money, and that Defendant paid all of the quarterly dividends "out of his own pocket."  Defendant and Russell also admitted that the buildings on the property where Green Acres Pharm, LLC was operating were not owned by Russell.

27.    Defendant filed a voluntary Chapter 7 case on or about June 26, 2019.  At the time of the Chapter 7 filing, Defendant owed Plaintiffs no less than $400,000.  Plaintiffs allege this amount is nondischargeable.  This amount is subject to proof at trial.

28.    As both a direct and proximate cause of Defendant's conduct, Plaintiffs allege they have been damaged as set forth below.

## II.

### FIRST CLAIM FOR RELIEF (11 U.S.C. § 523(a)(2)(A))

29.    Plaintiffs incorporate and reallege paragraphs 1 through 28, inclusive, as though fully set forth herein.

30.    In June 2016, Defendant made the following representations to Plaintiffs:

a.    Plaintiffs would own a minority interest in Green Acres Pharm, LLC, which would be evidenced by a stock certificate;

b.    Green Acres Pharm, LLC was already operating profitable as a company and would be finishing a buildout to expand operations with their investments by the end of 2016;

c.    Plaintiffs would be paid quarterly dividends from profits starting at Q3 of 2016;

d.    Plaintiffs would receive quarterly financial statements accurately reflecting Green Acres Pharm, LLC's financial position, including income, expenses and business

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA  92501
951-783-9470

J2002/000 - 193865.1

1  performance;

2        e.      Plaintiffs would receive a payment whenever Green Acres Pharm, LLC

3  made a disbursement to other equity holders;

4        f.      Green Acres Pharm, LLC was fully licensed to legally grow marijuana in

5  Washington State and was prepared to immediately prepare and sell oils;

6        g.      Green Acres Pharm, LLC had a significant inventory of marijuana plants in

7  cultivation;

8        h.      Green Acres Pharm, LLC did not have any debt and owned the buildings on

9  its property;

10        i.      Green Acres Pharm, LLC was financially sound and had a market value of

11  over $20M;

12        j.      Defendant had a substantial net worth and would back Plaintiffs'

13  investment;

14        k.      Green Acres Pharm, LLC would generate over $30M in sales from January

15  1, 2017 through December 31, 2017;

16        l.      Green Acres Pharm, LLC was operated by an experienced team of honest

17  people;

18        m.      Defendant fad extensive experience in running marijuana grow operations;

19        n.      Plaintiffs would make back their initial investment in a few years;

20        o.      Plaintiffs would receive regular updates and financial information from

21  Defendant; and,

22        p.      Brooks Bailey was also investing in Green Acres Pharm, LLC.

23      31.    Each of these representations was in fact false and Defendant knew at the time he

24  made the aforementioned representations that each was false.  In truth,

25        a.      Plaintiffs did not receive evidence of an ownership interest in Green Acres

26  Pharm, LLC or any other entity;

27        b.      Green Acres Pharm, LLC was not operating profitably, continued to be

28  unprofitable in 2017, and did not use the Plaintiffs' investment money to finish the build out nor

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

J2002/000 - 193865.1

1    did it finish the build out in 2016;

2        c.    Plaintiffs have not been paid the quarterly dividends promised and the

3    "dividends" paid were actually money from a different source;

4        d.    Plaintiffs have not received accurate financial information regarding Green

5    Acres Pharm, LLC or any other entity;

6        e.    Green Acres Pharm, LLC, Renewable Technologies Solution, Inc., SMRB,

7    LLC, and other equity holders, including Defendant, have received disbursements that Plaintiffs

8    have not received;

9        f.    Green Acres Pharm, LLC was not prepared to prepare and sell oils;

10        g.    Green Acres Pharm, LLC did not have an inventory of marijuana plants as

11    they had to be sold;

12        h.    Green Acres Pharm, LLC had and has significant debt;

13        i.    Green Acres Pharm, LLC is not financially sound;

14        j.    Defendant does not have a substantial net worth;

15        k.    Green Acres Pharm, LLC failed to generate anything close to $30M in sales

16    from January 1, 2017 to December 31, 2017;

17        l.    Green Acres Pharm, LLC is not operated by an experienced team of honest

18    people;

19        m.    Defendant does not have meaningful experience running marijuana ow

20    operations;

21        n.    Green Acres Pharm, LLC has not taken any steps to register itself for a

22    public offering – indeed as a limited liability company, it cannot do so as a matter of law;

23        o.    Plaintiffs have not made back their investment;

24        p.    Plaintiffs have not received accurate updates or financial information, and

25    instead have had the financial status of the Defendant's continually misrepresented to them; and

26        q.    Plaintiffs are informed and believe and thereon allege that Brooks Bailey is

27    not an investor in Green Acres Pharm, LLC, and worked for Defendant.

28        32.    Defendant made the aforementioned representations with the intent and goal that

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

J2002/000 - 193865.1

Plaintiffs would rely thereon and pay to Defendants $400,000 to purchase securities in Green Acres Pharm, LLC, Renewable Technologies Solution, Inc., and SMRB, LLC.

33.    Plaintiffs were unaware of the falsity of the aforementioned representations at the time they paid to Defendants $400,000 and purchased securities in Green Acres Pharm, LLC, Renewable Technologies Solution, Inc., and/or SMRB, LLC

34.    Plaintiffs reasonably relied upon the false representations made by Defendant. Plaintiffs would not have given Defendant $400,000 or purchased securities in Green Acres Pharm, LLC, Renewable Technologies Solution, Inc., or SMRB, LLC if they had known the truth of Defendant's false representations.

35.    As a direct and proximate result of the fraudulent conduct of Defendant, Plaintiffs have sustained economic damages in an amount of no less than $400,000, plus pre-judgment interest, costs and attorney's fees according to proof.

36.    Defendant's conduct has resulted in general damages to Plaintiffs, including emotional distress, anxiety, fear and worry in amount not less than $400,000, subject to proof at trial.

37.    Defendant's conduct was done intentionally and willfully, with the purpose and design to defraud Plaintiffs.  Defendant knew that his conduct would cause Plaintiffs great financial and emotional harm.  Defendant's conduct was wanton, willful and completely devoid of any legitimate purpose.  Left unchecked these two individuals will seek to defraud and cause harm to others.

38.    Plaintiff asserts that Defendant's omissions of materials facts and intentional misrepresentations and subsequent loss of $400,000 constitutes constitute false pretenses, false representations, or actual fraud, and said debt is nondischargeable pursuant to pursuant to Untied States Code, title 11, section 523(a)(2)(A).

III.

SECOND CLAIM FOR RELIEF (Section 523(a)(4))

39.    Plaintiffs incorporate and reallege paragraphs 1 through 38, inclusive, as though fully set forth herein.

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

10
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

J2002/000 - 193865.1

40.     At all times relevant herein Defendant was a managing member of Green Acres Pharm, LLC and therefore owed a fiduciary duty to Plaintiffs, who own a minority interest therein.

41.     At all times relevant herein, Defendant was the CEO, Secretary, CFO and Director of Renewable Technologies Solution, Inc. and therefore owed a fiduciary duty to Plaintiffs, who own a minority interest in the company.

42.     Defendant breach his fiduciary duty in several ways, including:

    a.     Failing to provide Plaintiffs evidence of their ownership interest in each respective company;

    b.     Failing to provide Plaintiffs accurate accounting and financial information;

    c.     Failing to provide Plaintiffs accurate tax information;

    d.     Failing to pay all taxes, fees and fines as the same have come due;

    e.     Failing to give Plaintiffs access to corporate books and records;

    f.     Failure to keep accurate books and records for the companies and accounts;

    g.     Failing to hold an annual shareholder/member meeting;

    h.     Failing to hold an annual board of director meeting;

    i.     Failing to follow prescribed rules and laws governing the maintenance of corporate books and records;

    j.     Failing to follow applicable bylaws and corporate resolutions regarding the management of the companies;

    k.     Misrepresenting the financial status of the companies;

    l.     Engaging in criminal activities, which puts the company and its owners in jeopardy;

    m.     Gross mismanagement;

    n.     Theft and conversion of company assets;

    o.     Failure to disclose money to Plaintiffs which they were entitled to receive as shareholder/member;

    p.     Diverting assets so as to put them beyond the reach of Plaintiffs;

    q.     Paying himself excessive and/or non-disclosed salaries;

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

J2002/000 - 193865.1

r.    Misrepresenting company income and expenses to Plaintiffs;

s.    Using company assets and funds to pay his personal non-business-related expenses;

t.    Diverting business opportunities to other ventures and/or himself; and

u.    Self-dealing.

43.    Defendant acted without justification and against the interests of Plaintiffs. Plaintiffs did not consent to the wrongful actions of Defendant as alleged herein.

44.    As a direct and proximate result of Defendant's breach of his fiduciary duty, Plaintiffs have sustained economic damages in an amount of no less than $400,000, plus prejudgment interest, costs and recoverable attorney's fees, all subject to proof at trial.

45.    Plaintiffs assert that the Defendant's breach of fiduciary (fiduciary defalcation) and embezzlement of Plaintiffs' $400,000 constitutes a breach of fiduciary duty and embezzlement, and said debt is nondischargeable pursuant to section 523(a)(4).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully pray for money judgment and determination of nondischargeability of debt pursuant to section 523(a)(2)(A) and (a)(4) against Defendant as follows:

<u>FIRST CLAIM FOR RELIEF</u>

1.    For money judgment against Defendant and in favor of Plaintiffs in an amount of no less than $400,000 but subject to proof at trial;

2.    That the $400,000 debt owing by Defendant to Plaintiffs be determined nondischargeable pursuant to 11 U.S.C. section 523(a)(2)(A);

3.    For attorneys' fees and costs;

4.    For interest thereon; and,

5.    For such other and further relief as the Court deems just, equitable and proper.

<u>SECOND CLAIM FOR RELIEF</u>

6.    For money judgment against Defendant and in favor of Plaintiffs in an amount of no less than $400,000 but subject to proof at trial;

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

12
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

J2002/000 - 193865.1

7.    That the $400,000 debt owing by Defendant to Plaintiffs be determined nondischargeable pursuant to 11 U.S.C. section 523(a)(4);

8.    For attorneys' fees and costs;

9.    For interest thereon; and,

10.    For such other and further relief as the Court deems just, equitable and proper.

Dated:  September 26, 2019                    STREAM KIM HICKS WRAGE & ALFARO, PC


By: _/s/ Jamie E. Wrage_____
      Jamie E. Wrage
      Attorneys for Plaintiffs,
      Rebecca Joan Joseph, Jonathan Joseph,
      Steven Kramer, and Jason Joseph

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE. 700
RIVERSIDE, CA 92501
951-783-9470

13
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

J2002/000 - 193865.1

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Rebecca Joan Joseph, Jonathan Joseph,<br>Steven Kramer, and Jason Joseph | DEFENDANTS<br><br>Guy S. Griffithe |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Jamie E. Wrage, SBN 188982<br>Stream Kim Hicks Wrage & Alfaro PC<br>3403 Tenth Street, Suite 700, Riverside, CA 92501<br>Telephone number: (951) 783-9470 | ATTORNEYS (If Known)<br>Bert Briones<br>Red Hill Law Group<br>15615 Alton Parkway, Ste. 210, Irvine, CA 92618<br>Telephone: (714) 733-4455 |
| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

First Claim for Relief: Omissions of materials facts and intentional misrepresentations and subsequent loss of constitutes constitute false pretenses, false representations, or actual fraud, and said debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); Second Claim for Relief: Breach of fiduciary duty and embezzlement, and said debt is nondischargeabble pursuant to 11 U.S.C. § 523(a)(4).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud ①
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny ②
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
   (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 400,000.00 |

Other Relief Sought
(2) Debt determined nondischargeable; (3) attorneys' fees and costs, (4) interest thereon; and (5) any other relief as the Court deems just, equitable and proper

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Guy S. Griffithe | BANKRUPTCY CASE NO.<br>8:19-BK-12480-TA | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Theodor C. Albert |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE   September 26, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Jamie E. Wrage | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.