# EXHIBIT 1

## PURCHASE OF SHARES INTEREST AGREEMENT

**THIS PURCHASE OF BUSINESS** AGREEMENT (the "Agreement") made and entered into this 20th day of June, 2016 (the "Execution Date").

**BETWEEN:**

Renewable Technologies Solution. Inc (NV20041577711) of 3653 Via Zumaya St. Corona. CA 92881 (the "Seller")

OF THE FIRST PART

and

Jonathan & Becky Joseph (the "Purchaser")

OF THE SECOND PART

**BACKGROUND**

A. The Seller Robert Russell is the owner of 100% of the issued and outstanding interest (the "Interest") of SMRB, LLC a Washington Corporation (the "Corporation") which carries on the business of grow and oil manufacturing under the operating name Green Acres Pharms in State of Washington. The seller(s) Robert Russell and Guy Griffithe are 100% owners of Renewable Technologies Solution. Inc.

B. The Seller of Renewable Technologies solution Inc. which will be identified as RTSI desires to sell the Interest to the Purchaser. and the Purchaser desires to buy the Interest of SMRB. LLC owed by RTSI.

IN CONSIDERATION of the provisions contained in this Agreement and for other good and valuable consideration. the receipt and sufficiency of which consideration is acknowledged, the Parties agree as follows:

**Definitions**

1. The following definitions apply in the   Agreement:

Initials [signatures]                    Page 1 of 16

Exhibit 1 - 1 of 16

a. "Closing" means the completion of the purchase and sale of the Interest as described in this Agreement by the payment of agreed consideration, and the execution of this agreement.

b. "Environmental Law" means any and all statutes, regulations, common laws or any other directives having force of law pertaining to protection of the environment including but not limited to all laws affecting the production, manufacture, storage, transport and disposal of Hazardous Materials.

c. "Hazardous Material" means any material or substance of any description that could reasonably be expected to cause harm or damage to the health of man or any other living organism.

d. "Parties" means both the Seller and the Purchaser and "Party" means any one of them.

### Sale

2. Subject to the terms and conditions of this Agreement, and in reliance on the representations, warranties, and conditions set out in this Agreement, the Seller agrees to sell 1% One Percent Ownership Interest to the Purchaser and the Purchaser agrees to purchase the Interest from the Seller (Purchaser is acquiring ownership interest in SMRB, LLC. Owned by RTSI.)

### Purchase Price

3. The price to be paid by the Purchaser to the Seller for the Ownership Interest will be $200,000.00 US Dollars (the "Total Purchase Price").

### Closing

4. The Closing of the purchase and sale of the Ownership Interest will take place on upon execution of all parties at the offices of the Seller or at such other time and place as the Parties mutually agree.

5. At Closing, and upon the Purchaser resolving the Total Purchase Price in full to the Seller, the Seller will:

Initials [signatures]   Page 2 of 16

Exhibit 1 - 2 of 16

a. provide the Purchaser with this duly executed interest agreement; and

b. Seller will take all steps necessary for the Corporation to enter the Purchaser, or its nominee, on the books of the Corporation, as the holder of the Interest.

### Payment

8. The Total Purchase Price for the Ownership Interest will be paid by the Purchaser in a lump sum payment of $200,000.00 US Dollars in the form of a wire transfer.

### Seller's Representations and Warranties

9. The Seller represents and warrants to the Purchaser that:

a. The Seller has full legal authority to enter into and exercise its obligations under this Agreement.

b. All net proceeds of all products grown or manufactured sold will be disbursed on a quarterly basis. First distribution will be executed on the first Friday proceeding October 27, 2016. Second distribution will be executed on the Friday proceeding January 1st, 2017. All following distributions will follow on a normal calendar quarter. Profits are determined after all expenses are paid the remaining is deemed profits. Net profits from SMRB, LLC AKA Green Acres Pharms will be issued to Renewable Technologies Solutions, Inc. based on the total net profit for SMRB, LLC than allocated to its Ownership Interest holders based on percentage of ownership interest in perpetuity.

c. The Corporation is a corporation duly incorporated or continued, validly existing, and in good standing and has all requisite authority to carry on business as currently conducted.

d. The Seller is the absolute beneficial owner of the Interest, free and clear of any liens, charges, encumbrances or rights of others, and is exclusively entitled to dispose of the Ownership Interest.

e. The Seller is a resident of the United States for the purposes of the *Internal Revenue Code*.

Initials [signature]    Page 3 of 16

Exhibit 1 - 3 of 16

f. The Corporation has withheld all amounts required to be withheld under income tax legislation and has paid all amounts owing to the proper authorities.

g. There are no claims threatened or pending against the Corporation by any current or past employee relating to any matter arising from or relating to the employment of the employee.

G  The Corporation is operating in accordance with all applicable laws, rules, and regulations of the jurisdictions in which it is carried on. In compliance with such laws, the Seller has duly licensed, registered, or qualified the Corporation with the appropriate public authorities.

h. The Corporation has not produced, manufactured, stored, transported or disposed of any Hazardous Materials of any kind and to the best knowledge of the Seller, no discharge, leakage or release of Hazardous Materials, whether accidental or otherwise, has occurred for which the Purchaser could ultimately become liable. There are no ongoing, pending, threatened or anticipated civil or criminal actions, enquiries or investigations with regard to the breach of any applicable Environmental Laws.

i. The Corporation maintains insurance policies on its assets, of full force and effect, and of adequate value as would be reasonable in its industry. The Corporation has neither defaulted under these insurance policies, as a result of failure to pay premiums or due to any other cause, nor has the Corporation failed to give notice or make a claim under these insurance policies in a timely manner.

j. The trademarks and trade names used in carrying on the Corporation are owned exclusively and validly by the Corporation. The trademarks and trade names are duly registered with the appropriate public authorities in order that the rights associated with the trademarks and trade names are protected. To the best knowledge of the Seller and the officers of the Corporation, there are no claims of

   Infringement existing against the patents, trademarks, copyrights or any other trade names used by the Corporation.

  k. Any trademarks and trade names used in whole or in part in or required for the proper carrying on of the Corporation are validly and beneficially owned by and for the sole and exclusive use of the Corporation.

  l. The conduct of the Corporation does not infringe on the patents, trademarks, trade names or copyrights, domestic or foreign of any other person, firm or corporation to the best knowledge of the officers of theCorporation.

  m. This Agreement has been duly executed and delivered by the Seller and constitutes a legal and binding obligation of the Seller, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy and insolvency, by other laws affecting the rights of creditors generally, and by equitable remedies granted by a court of competent jurisdiction.

10. The representations and warranties given in this Agreement are the only representations and warranties. No other representation or warranty, either expressed or implied, has been given by the Seller to the Purchaser.

11. The Seller warrants to the Purchaser that each of the representations and warranties made by it is accurate and not misleading at the Closing Date. The Seller acknowledges that the Purchaser is entering into this Agreement in reliance on each warranty and representation.

12. The Seller's representations and warranties will survive the Closing Date of this Agreement for a period of five years, after which time, if no claim has been made by the Purchaser against the Seller regarding the breach or inaccuracy of a representation or warranty, the Seller will have no further liability with regard to any of the representations or warranties given in this Agreement.

13. Where the Purchaser has a claim against the Seller relating to one or more representations or warranties made by the Seller, the Seller will have no liability to the Purchaser unless the Purchaser provides notice in writing to the Seller containing full details.

14. Where the Purchaser has a claim against the Seller relating to one or more representations or warranties made by the Seller, and the Purchaser is entitled to recover damages from a third party then the amount of the claim against the Seller will be reduced by the recovered or recoverable amount less all reasonable costs incurred by the Purchaser in recovering the amount from the third party.

**Purchaser's Representations and Warranties**

15. The Purchaser represents and warrants to the Seller the following:

    a. The Purchaser has full legal authority to enter into and exercise its obligations under this Agreement.

    b. The Purchaser has funds available to pay the full Total Purchase Price and any expenses accumulated by the Purchaser in connection with this Agreement and the Purchaser has not incurred any obligation, commitment, restriction, or liability of any kind, absolute or contingent, present or future, which would adversely affect its ability to perform its obligations under this Agreement.

    c. The Purchaser has not committed any act or omission that would give rise to any valid claim relating to a brokerage commission, finder's fee, or other similar payment.

    d. The Purchaser is a resident of the United States for the purposes of the *Internal Revenue Code*.

    e. This Agreement has been duly executed by the Purchaser and constitutes a legal and binding obligation of the Purchaser, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy and insolvency, by other laws affecting the rights of creditors generally, and by equitable remedies granted by a court of competent jurisdiction.

Initials

    f. The Purchaser has no knowledge that any representation or warranty given by the Seller in this Agreement is inaccurate or false.

    g. If the Interest Holder chooses to sell their interest the company reserves the rights to purchase all percentages of Owner Interest prior to all open market sells at current market value. If the company chooses to not acquire the ownership interest then the company must approve the new purchaser.

16. The representations and warranties given in this Agreement are the only representations and warranties. The Purchaser has given no other representation or warranty, either expressed or implied, to the Seller.

17. The Purchaser warrants to the Seller that each of the representations and warranties made by it is accurate and not misleading at the date of Closing. The Purchaser acknowledges that the Seller is entering into this Agreement in reliance on each warranty and representation.

18. Where the Seller has a claim against the Purchaser relating to one or more representations or warranties made by the Purchaser, and the Seller is entitled to recover damages from a third party then the amount of the claim against the Purchaser will be reduced by the recovered or recoverable amount less all reasonable costs incurred by the Seller in recovering the amount from the third party.

Initials _____

### Conditions Precedent to be Performed by the Purchaser

19. The obligation of the Seller to complete the sale of the Interest under this Agreement is subject to the satisfaction of the following conditions precedent by the Purchaser, on or before the Closing Date, each of which is acknowledged to be for the exclusive benefit of the Seller and may be waived by the Seller entirely or in part:

    a. All of the representations and warranties made by the Purchaser in this Agreement will be true and accurate in all material respects on the Closing Date.

### Conditions Precedent to be performed by the Seller

20. The obligation of the Purchaser to complete the purchase of the Owner Interest under this Agreement is subject to the satisfaction of the following conditions precedent by the Seller, on or before the Closing Date, each of which is acknowledged to be for the exclusive benefit of the Purchaser and may be waived by the Purchaser entirely or in part:

    a. All of the representations and warranties made by the Seller in this Agreement will be true and accurate in all material respects on the Closing Date.

    b. The Seller will obtain and complete any and all forms, documents, consents, approvals, registrations, declarations, orders, and authorizations from any person or governmental or public body that are required of the Seller for the proper execution of this Agreement and transfer of the Owner Interest to the Purchaser.

    c. The Seller will provide the Purchaser with complete information concerning the operation of the Corporation, in order to put the Purchaser in a position to carry on in the place of the Seller.

Disclosure

21. Upon the reasonable request of the Purchaser, the Seller will, from time to time, allow the Purchaser and its agents, counsel, accountant, or other representatives to have unrestricted access to the premises of SMRB, LLC and Renewable Technologies Solutions, Inc. limited to the scope of SMRB, LLC AKA Green Acres Pharms ownership, the Corporation and to all of the books, records, documents, and accounts of the Corporation, during normal business hours in order for the Purchaser to confirm the representations and warranties given by the Seller in this Agreement.

Conditions Precedent Not Satisfied

22. If either Party fails to satisfy any condition precedent as set out in this Agreement on or before the Closing Date and the opposite Party does not waive that condition precedent, then this Agreement will be null and void.

Exhibit 1 - 9 of 16

## Non-Solicitation

23. The Purchaser agrees that any attempt to encourage or induce employees, directors, agents or contractors to leave their jobs with the Corporation would be harmful and damaging to the Seller. The Purchaser further agrees that any attempt on the part of the Purchaser to interfere with the Seller's relationship with employees, directors, agents, contractors, vendors or service providers of the Corporation would be harmful and damaging to the Purchaser.

24. The Purchaser agrees that during the term of this Agreement and for a period of five years after the Closing Date of this Agreement, the Purchaser will not in any way directly or indirectly:

    a. Induce or attempt to induce any employee, director, agent, contractor or other service provider of the Seller to quit employment or retainer with the Seller;

    b. Otherwise interfere with or disrupt the Sellers's relationship with its employees, directors, agents, contractors or other service providers;

    c. Discuss employment opportunities or provide information about competitive employment to any of the Seller's employees, directors, agents, contractors or other service providers; or

    d. Solicit, entice, or hire away any employee, director, agent, contractor or other service provider of the Seller.

### Non-Competition

25. For a period of five years (the "Non-Competition Period") after the Closing Date, the Purchaser will not, either individually or in conjunction with any other person or business entity or in any other manner whatsoever, have interest in, enter employment with, lend money to, advise or permit its name to be associated with any business similar to or in competition with the Seller.

Initials ___    Page 10 of 16

Exhibit 1 - 10 of 16

26. If the Non-Competition Period is determined to be void or unenforceable by a court of competent jurisdiction then it is the intent of the Parties that the Non-Competition Period be reduced in scope only to the extent deemed necessary to render the provision reasonable and enforceable. The Purchaser agrees that the Non-Competition Period is reasonable and all defenses to the enforcement of the Non-Competition Period are waived by the Seller.

### Non-Assumption of Liabilities

27. It is understood and agreed between the Parties that the Purchaser is not assuming and will not be liable for any of the liabilities, debts or obligations of the Seller arising out of the ownership or operation of the Corporation prior to and including the Closing Date.

28. The Purchaser will indemnify and hold harmless the Seller, of its officers, directors, employees, agents and shareholders from and against all costs, expenses, losses, claims, and liabilities, including reasonable legal fees and disbursements, or demands for income, sales, excise or other taxes, suffered or incurred by the Seller or any of the above mentioned persons arising out of the ownership or operation of the Corporation prior to and including the Closing Date.

### Transfer of Third Party Contracts

29. This Agreement should not be construed as an assignment of any third party contract from the Seller to the Purchaser if the assignment would be a breach of the third party contract.

30. The Purchaser will be solely responsible for acquiring new contracts with third parties where the existing contracts are not legally assignable from the Seller to the Purchaser.

31. Notwithstanding any other provision in this Agreement to the contrary, the Seller will not be liable for any losses, costs or damages of any kind including loss of revenue or decrease in value of the Corporation resulting from the failure of the Purchaser to acquire any third party contracts.

Initials _____    Page 11 of 16

Exhibit 1 - 11 of 16

Exhibit 1  Page 13 of 17

### Notices

32. Any notices or deliveries required in the performance of this Agreement will be deemed completed when hand-delivered, delivered by agent, or seven (7) days after being placed in the post, postage prepaid, to the Parties at the addresses contained in this Agreement or as the Parties may later designate in writing.

### Expenses/Costs

33. The Parties agree to pay all their own costs and expenses in connection with this Agreement.

### Confidentiality

34. The Seller and the Purchaser will hold confidential all information (the "Confidential Information") pertaining to this Agreement including, but not limited to, the terms of this Agreement, the Total Purchase Price, the Parties to this Agreement, and the subject matter of this Agreement as well as any written or oral information obtained about the respective Parties that is not currently in the public domain. Confidential Information will not include the following:

    a. Information generally known in the respective industries of the Purchaser and the Seller.

    b. Information that enters the public domain through no fault of the Purchaser or the Seller.

    c. Information that is independently created by the Purchaser or the Seller respectively without direct or indirect use of information obtained during the course of negotiations for this Agreement.

Initials [signature]                              Page 12 of 16

Exhibit 1 - 12 of 16

    d. Information that is rightfully obtained by the Purchaser or the Seller from a third party who has the right to transfer or disclose the information.

35. The Seller and the Purchaser may not disclose any Confidential Information relating to this Agreement to any of its employees, agents and advisors where there is a need to know in relation to this Agreement and where the personnel agree to be legally bound by the same burdens of confidentiality.

36. The Seller agrees to indemnify the Purchaser against any and all harm suffered by the Purchaser for any breach of confidentiality by the personnel of the Seller.

37. The Purchaser agrees to indemnify the Seller against any and all harm suffered by the Seller for any breach of confidentiality by the personnel of the Purchaser.

38. The confidentiality restrictions in this Agreement will continue to apply after the Closing Date of this Agreement without any limit in time.

### Mediation and Arbitration

39. In the event a dispute arises out of or in connection with this Agreement, the Parties will attempt to resolve the dispute through friendly consultation.

40. If the dispute is not resolved within a reasonable period then any or all outstanding issues may be submitted to mediation in accordance with any statutory rules of mediation. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration in accordance with the laws of the State of Nevada. The arbitrator's award will be final, and judgment may be entered upon it by any court having jurisdiction within the State of Nevada.

### Severability

41. The Parties acknowledge that this Agreement is reasonable, valid, and enforceable; however, if any part of this Agreement is held by a court of competent jurisdiction to be invalid, it is the intent of the Parties that such provision be reduced in scope only to the extent deemed necessary to render the provision reasonable and enforceable and the

remainder of the provisions of this Agreement will in no way be affected or invalidated as a result.

42. Where any provision in this Agreement is found to be unenforceable, the Purchaser and the Seller will then make reasonable efforts to replace the invalid or unenforceable provision with a valid and enforceable substitute provision, the effect of which is as close as possible to the intended effect of the original invalid or unenforceable provision.

### Governing Law

43. This Agreement will be governed by and construed in accordance with the laws of the State of Nevada.

### Jurisdiction

44. The courts of the State of Nevada are to have jurisdiction to settle any dispute arising out of or in connection with this Agreement.

### General Provisions

45. This Agreement contains all terms and conditions agreed to by the Parties. Statements or representations which may have been made by any Party to this Agreement in the negotiation stages of this Agreement may in some way be inconsistent with this final written Agreement. All such statements are declared to be of no value to either Party. Only the written terms of this Agreement will bind the Parties.

46. This Agreement may only be amended or modified by a written instrument executed by all of the Parties.

47. A waiver by one Party of any right or benefit provided in this Agreement does not infer or permit a further waiver of that right or benefit, nor does it infer or permit a waiver of any other right or benefit provided in this Agreement.

48. This Agreement will not be assigned either in whole or in part by any Party without the written consent of the other Party.

Initials

Page 14 of 16

Exhibit 1 - 14 of 16

49. This Agreement will pass to the benefit of and be binding upon the Parties' respective heirs, executors, administrators, successors, and permitted assigns.

50. The clauses, paragraphs, and subparagraphs contained in this Agreement are intended to be read and construed independently of each other. If any part of this Agreement is held to be invalid, this invalidity will not affect the operation of any other part of this Agreement.

51. All of the rights, remedies and benefits provided in this Agreement will be cumulative and will not be exclusive of any other such rights, remedies and benefits allowed by law or equity.

52. This Agreement may be executed in counterparts.

53. Headings are inserted for the convenience of the Parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine gender include the feminine gender and vice versa. Words in the neuter gender include the masculine gender and the feminine gender and vice versa.

**IN WITNESS WHEREOF** the Parties have duly affixed their signatures under hand and seal on this 20th day of June, 2016.

Renewable Technologies Solution, Inc.
(Seller)
Per: _____
Guy Griffithe – Secretary

Per: _____
Robert Russell - President

_____
Jonathan Joseph

_____
Becky Joseph

Initials _____    Page 15 of 16

Exhibit 1 - 15 of 16

# This Page is Intentionally left Blank

Initials _/s/_

Page 16 of 16

Exhibit 1 - 16 of 16